THE CITY OF GLENS FALLS, Plaintiff, v. THE STANDARD OIL COM-
PANY OF NEW YORK and Another, Defendants.

Supreme Court, Warren County, April 19, 1926.

Municipal corporations — city of Glens Falls — zoning ordinance — ordi-
nance delegating power to abutting property owners on street affected
is invalid — said invalid ordinance does not prevent further legislation
by city until judicially declared invalid — city charter, Laws of 1908,
chap. 29, § 32, requires publication of every ordinance for " two weeks
successively, once each week before the same shall take effect "— ordi-
nance effective, if personal service of copy thereof is made — ordinance
not enforcible where at time action was commenced but one publica-
tion had been made although duly published before trial — defendant
may not be restrained from completing construction of gasoline station
and operation thereof within restricted district — ordinance not invalid
on ground certified copy thereof was not presented to mayor for his
signature — fact that ordinance was passed at special session of common
council does not invalidate it — said ordinance not amendment to prior
ordinance — neither leaving copy of ordinance with defendant employee
nor mailing copy directed to manager of district office constitutes per-
sonal service of ordinance within meaning of charter — city not entitled
to restrain maintenance of station by equity rule that relief will be
adapted to exigencies of case.

A zoning ordinance, passed by the common council of the city of Glens Falls on
July 22, 1925, under the authority of subdivision 25 of section 20 of the General
City Law, which did not make a division of the city into districts nor provide for
the regulation of trades and industries or prescribe what trades and industries
should be excluded or subjected to special regulations, but delegated to the
owners of four-fifths of the street frontage in any block the power to determine
the structures to be erected or altered in that block, effected an unlawful delega-
tion of governmental power and is, therefore, void.

The fact that said invalid ordinance has not been so declared by a court of com-
petent jurisdiction does not prohibit the city authorities from further legislating
on the subject, except after notice and hearing as provided by section 83 of the
General City Law.

A zoning ordinance enacted by the common council of the city of Glens Falls on
September 30, 1925, which divided said city into districts of two classes known
as " restricted districts " and " unrestricted districts," and prohibited in the
restricted districts all commercial activities, including the operation of gasoline
filling stations, was not enforcible until it had been published " for two weeks
successively, once each week before the same shall take effect " pursuant to
section 32 of the Glens Falls city charter (Laws of 1908, chap. 29).

Accordingly, the defendant Standard Oil Company, holding a lease of premises
included within one of the restricted districts as defined in said zoning ordinance,
cannot be restrained from completing the construction and thereafter main-
taining a building on said premises designed to be used as a gasoline pumping
and filling station and from selling gasoline thereon, on the theory that it
violates said ordinance, for the reason that said defendant was not bound by
said ordinance at the time of the commencement of this action, since it appears
that the ordinance was passed September 30, 1925, and thereafter published

but once in October and was not published once a week for two successive weeks subsequent to its adoption by the common council; the fact that it was published during the month of February, 1926, after the commencement of plaintiff's action for an injunction to restrain the completion, construction and maintenance of the building, is not available to the city.

*It seems*, that the ordinance is not invalid on the ground that a certified copy thereof was not presented to the mayor for his signature, since the provision in the charter requiring the submission of a certified copy is for the mayor's protection and may be waived by him. Nor is it invalid because it was passed at a special meeting of the common council. Nor is it invalid on the ground that it is an amendment to a prior ordinance, for the reason that no notice was given and no hearing had, where the prior ordinance itself was void, and the recital that the ordinances " be and hereby are amended " was surplusage.

While personal service of a copy of the zoning ordinance on the defendant Standard Oil Company would have made it effective against said corporation, irrespective of publication, personal service was not shown, since it appears that the only service that was made was that attempted by leaving a copy of the ordinance at the home of an employee of the corporation, the character of whose employment was not shown, and by mailing a certified copy directed to the general manager of the corporation at its district office at Albany.

The equity rule that relief will be adapted to the exigencies of the case as they exist at the close of the trial does not authorize the issuance of an injunction on the ground that the ordinance had been legally published and was valid and enforcible before the case was tried, for the reason that said ordinance was not in effect at the time when the action was commenced.

ACTION by the plaintiff against the defendants, who are respectively the lessee and owner of the real property located on Glen street at the corner of Thomson avenue in the plaintiff city, to restrain the completion, construction and maintenance of a building on said premises designed to be used as a gasoline pumping and filling station and to enjoin the sale of gasoline there on the theory that the same violates a zoning ordinance of the municipality.

*J. Ward Russell* [*Henry W. Williams* and *Daniel F. Imrie* of counsel], for the plaintiff.

*Chambers & Finn* [*Matthew Dwyer* and *Walter A. Chambers* of counsel], for the defendant Standard Oil Company of New York.

*Frank D. Morehouse*, for the defendant Gertrude Leavens Scott.

HEFFERNAN, J. About August 28, 1925, the defendant Standard Oil Company of New York procured from the defendant Scott an option for a lease of these premises. On September 19, 1925, the option was exercised. At the same time the defendant Scott exercised an option which she had for the purchase of a certain portion of the premises covered by her option given to the defendant Standard Oil Company. On September 28, 1925, the defendant Scott delivered to the codefendant the lease. About November 9, 1925, the defendant Standard Oil Company began the erection of

a filling station. A number of gasoline pumps were installed. While the building was under construction, and on November 14, 1925, this action was brought and an injunction *pendente lite* secured from a justice of this court enjoining the completion of the gasoline station and restraining the use of the tanks, pumps and buildings referred to. The relief asked in the original complaint was for an injunction and for the recovery of a penalty of fifty dollars a day for each day during the continuance of the alleged violation in accordance with the provisions of such ordinance. On the trial the complaint was amended so as to change the form of action to one in equity for injunctive relief only, and the elimination of all claims for penalties. The original complaint alleged a violation of an ordinance adopted by the corporate authorities of the plaintiff on September 30, 1925. The amended complaint not only charges a violation of that ordinance but in the event that it should be held to be defective it contains appropriate allegations for the violation of a prior ordinance relating to the same subject adopted July 22, 1925.

The city charter (Laws of 1908, chap. 29) contains no provision for the enactment of such an ordinance. The authority for its adoption is found in subdivision 25 of section 20 of the General City Law (as added by Laws of 1917, chap. 483) which provides that every city is empowered:

" To regulate and restrict the location of trades and industries and the location of buildings, designed for specified uses, and for said purposes to divide the city into districts and to prescribe for each such district the trades and industries that shall be excluded or subjected to special regulation and the uses for which buildings may not be erected or altered. Such regulations shall be designed to promote the public health, safety and general welfare and shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the direction of building development, in accord with a well considered plan."

Section 23 of the General City Law (added by Laws of 1913, chap. 247) prescribes for the exercise of the powers thus conferred in the following language: " The powers granted by this act are to be exercised by the officer, officers or official body vested with such powers by any other provision of law or ordinance (subject to amendment or repeal of any such ordinance) *and in the manner and subject to the conditions prescribed by law or ordinance* (subject to amendment or repeal of any such ordinance), but no provision of any special or local law shall operate to defeat or limit in extent the grant of powers contained in this act;   *   *   *."

That the Legislature has power to authorize the adoption of zoning ordinances in the cities of this State is no longer a doubtful question. (*Lincoln Trust Co.* v. *Williams Bldg. Corp.*, 229 N. Y. 313; *Matter of Wulfsohn* v. *Burden*, 241 id. 288.)

In pursuance of the authority thus conferred, the plaintiff's common council on the 22d day of July, 1925, attempted to enact a zoning ordinance. The legislation born of this attempt did not make a division of the city into districts, made no provision for the regulation of trades and industries and did not prescribe what trades and industries should be excluded or subjected to special regulation. It delegated to the owners of four-fifths of the street frontage on any block the power to determine the structures to be erected or altered in that block.

On the 29th of September, 1925, the mayor of the city, pursuant to the authority conferred on him by section 28 of the city charter, issued a call for a special meeting of the common council to be held at the council chambers on the 30th day of September, 1925, at seven-thirty o'clock P. M. " to audit bills and payrolls and for such other business as may properly come before the meeting." The common council of the city consists of the mayor and six councilmen. The proof shows that the special meeting was attended by all the members thereof. Acting on the assumption that the zoning ordinance theretofore adopted on July twenty-second was void, the governing body of the city, at such meeting, unanimously enacted a new zoning ordinance containing provisions, among others, dividing the city into districts of two classes known as " restricted districts " and " unrestricted districts." The premises of the defendants are included in the restricted district. In such district all commercial activities, including gasoline stations, with few exceptions not material here, are prohibited. Provision is made, however, for the continuance of any non-conforming use in existence at the time of the passage of the ordinance.

Section 29 of the city charter (Laws of 1908, chap. 29, as amd. by Laws of 1909, chap. 550), so far as material here, provides: " Every resolution or ordinance of the common council, board or commission, except rules for its own government shall, before it takes effect, be presented, duly certified by the clerk, to the mayor. If the mayor approves thereof he shall sign it within ten days after the receipt thereof by him and file it signed with the city clerk."

The plaintiff concedes that no certified copy of this ordinance was presented to the mayor as directed by this section. That official, however, signed and approved the original ordinance on October 1, 1925. On October second he also signed the same ordinance copied in the ordinance book of the city.

On October 7, 1925, the common council made a vain attempt to amend the ordinance of September thirtieth by extending the area of the restricted district. Section 83 of the General City Law (added by Laws of 1920, chap. 743) regulates the manner in which the common council may amend, supplement or change the regulations and districts established by zoning ordinances, but such changes can only be made after public notice and hearing. It is admitted that no public notice was given and no hearing had prior to the adoption of the alleged amendment, and consequently it is concededly void.

The only provision of the city charter relating to the publication of ordinances is found in section 32. This section, strange to say, is headed: " Arrest of Disorderly Persons." Every sentence thereof, with the exception of the last, has to do with disorderly conduct. The last sentence reads: " Every ordinance of the common council shall be published in the official paper for two weeks successively, once each week *before the same shall take effect, except that the same shall take effect immediately against any person who may be personally served with a copy thereof.*"

The Glens Falls *Times* and the Glens Falls *Post Star* are the two official papers of the city. The alleged ordinance adopted on the 22d day of July, 1925, was published in the proper papers the requisite number of times in accordance with the provisions of the charter just quoted. Either as a result of carelessness or indifference the ordinance adopted on September 30, 1925, was published only once in the official papers, the date of publication being October 2, 1925. In the month of February, 1926, during the progress of the trial of this action, legal publication of this ordinance was made in accordance with the charter requirements.

The city authorities evidently determined to make the ordinance of September thirtieth immediately effective against the defendants. On October 3, 1925, a certified copy thereof was served on the defendant Scott. While that defendant is undoubtedly a proper, though not a necessary party here, the Standard Oil Company is the principal defendant, and hence several abortive efforts were made to subject it to its provisions. On October 1, 1925, a certified copy was transmitted by registered mail to one Van Deusen, the manager of the Albany department of the defendant company. On October 2, 1925, one of that defendant's employees received and receipted for the registered package. A police officer of the city, during the week of October fifth, delivered another certified copy to the home of one Williamson. The paper was left with a maid. The maid, called as a witness, testified that Williamson " is connected with the Standard Oil but I don't know just what he

is doing." She further stated that she recalled the officer calling at the house and inquiring for her employer, but that she had no recollection as to whether or not he left with her a paper. She testified that if she received such a paper it was left on the hall table where mail was usually placed.

While counsel for all parties apparently concede that the ordinance of July twenty-second is invalid, they still insist upon a determination as to its legality. As already noted, the application of this ordinance depends, not upon the action of the municipal authorities, but upon the consents of property owners located on the street affected. To this extent, at least, there was an unlawful delegation of governmental power and consequently the ordinance is void. (*City of Utica* v. *Hanna*, 202 App. Div. 610; *Phelps* v. *Mayor, etc., of New York*, 112 N. Y. 216; *Eubank* v. *City of Richmond*, 226 U. S. 137.)

*Postestas delegata non est delegari* is a general maxim applicable with peculiar force to any form of sovereign power and operates to prevent the governing body of a municipal corporation, intrusted by the State with police power, from delegating its high functions to any other body or officer; the trust is official and personal and may be discharged only by those to whom the State commits it. (28 Cyc. 694.) Public powers are conferred upon a municipal corporation to be exercised by its law-making body at such time and in such manner as it deems expedient and proper and this authority cannot be delegated. The maintenance of this salutary principle by the courts is essential for the protection of the citizen.

I am not impressed with the assertion, given so much emphasis on the trial and in the briefs of counsel for the defense, that although this ordinance is invalid, yet, until so declared by a court of competent jurisdiction, the authorities of the city were prohibited from further legislating on this subject, except after public notice and hearing as provided by section 83 of the General City Law. That is not the law. As was said in *Saratoga State Waters Corporation* v. *Pratt* (227 N. Y. 429, 447), "an unconstitutional or void statute is not a law; it compels no one, binds no one, protects no one."

The serious question raised by the learned counsel for the defendants, and one that goes to the very essence of the action, is the regularity of the enactment of the ordinance of September thirtieth. They challenge its validity on various other grounds, among others, that it is arbitrary, discriminatory, unreasonable and that it lacks compliance with the requirements of the statute authorizing its adoption. They strenuously insist that in legal contemplation this legislation had no existence when the suit was commenced.

It is claimed that the failure to present a certified copy to the

mayor renders it ineffective.   As I view it, this provision is for the mayor's protection and may be waived by him.   Unquestionably he has the right to insist upon the presentation of a certified copy before he is required to act.   The time within which he must approve or disapprove the action of the common council does not begin to run until such presentation is made.   In this instance, however, the mayor signed the original ordinance thus evidencing his direct and formal official concurrence in the measure.   This provision of the charter is directory only, and a failure to observe it does not invalidate the legislation.   The omission of the city's agents to perform purely clerical and formal duties has no vitiating effect.

There is no force in the argument that the ordinance is invalid because passed at a special meeting.   No public notice is required in order to convene the common council.   The meeting was properly called and one of its purposes was for the transaction of " such other business as may properly come before the meeting."   Then, too, at this meeting every member of the common council was present and had an opportunity to participate and vote.

The objection that the ordinance of September thirtieth is an amendment to the ordinance of July twenty-second and that consequently notice should have been given and a hearing had, is not well taken.   It is true that in the recitals there occurs the statement " that the ordinances of the city of Glens Falls be and hereby are amended."   It was not necessary to make such a recital. Its incorporation is surplusage.   The most that can be said in favor of this criticism is that the language is grammatically incorrect. Polished diction and grammatical construction are not the usual attributes of municipal decrees.   In any event the ordinance of July twenty-second is void and consequently this language should not be held to apply to something that never had legal existence.

Counsel for the defendants assert that in order to be operative publication of the ordinance or personal service on those sought to be bound thereby is an essential requisite.   It is conceded that no legal publication was made prior to the institution of this action. The subsequent publication during the month of February, 1926, cannot avail the plaintiff in this suit.   The learned counsel for the city contend that publication of an ordinance of this character is not necessary because not in express terms directed by the General City Law; that the charter provision applies only to regulations pertaining to disorderly conduct; that in any event full compliance with the statute is shown by service upon Williamson and by mailing a certified copy to the manager of the defendant Standard Oil Company, and that actual receipt of the registered package

being admitted is the equivalent of personal service. In this, it seems to me, they are mistaken. There is no significance in the fact that the General City Law does not, in definite language, provide for the publication of ordinances. Whether publication shall be made or not depends entirely on the language of the city's charter. Section 23 of that law (added by Laws of 1913, chap. 247) does provide, however, that the exercise of the powers granted shall be " *in the manner and subject to the conditions prescribed by law or ordinance*  *  *  *.*" This clearly means that authority is granted to the municipalities of the State to adopt zoning ordinances; any city availing itself of this privilege must proceed in harmony with the terms of its basic law.

In my opinion plaintiff's charter requires the publication of every ordinance, or personal service in lieu thereof. The language used: " *Every ordinance* of the common council shall be published *  *  *  *" is not susceptible of any other construction. I agree with plaintiff's counsel that this requirement is not logically or scientifically arranged in the charter. Nevertheless it is there and there is no reason for limiting its effect to ordinances relating solely to disorderly conduct. It may be conceded, as claimed by plaintiff's counsel, that the prevailing doctrine, but not without vigorous dissent from courts of repute, is that in the absence of any statutory requirement publication is not an essential requisite of a valid ordinance. (28 Cyc. 359.)

In the absence of any provision directing that ordinances be published before they take effect, no publication is necessary and they become effective immediately. When publication is required, it must be in the prescribed mode. Until such publication is made the ordinance remains inoperative. Publication validates that which, unpublished, is null and void. In the case at bar the statute provides that the publication shall be made in the official papers " once each week *before the same shall take effect,*  *  *  *.*"

The language employed is plain and free from ambiguity. There is no escape from the conclusion that, to be binding, the ordinance must be published or personally served. The fundamental rule relating to municipal legislation is that an ordinance must be enacted in the manner provided by law. Ordinances within the municipal boundaries have the same force and effect as any other statute. The municipal charter is the organic law of the corporation. The rule applicable to the corporate authorities of municipal bodies is that when the mode in which their power is to be exercised is prescribed by the charter, that mode must be followed.

There are more or less loose dicta in the books which seem to

justify the contention of plaintiff's counsel that publication of an ordinance is not mandatory. Generally speaking, those authorities are based on some peculiar provision of local charters. It may be said that no well-considered decision sustains that view. *Commonwealth* v. *Davis* (140 Mass. 485), upon which the plaintiff relies, is distinguishable. In that case the requirement as to publication was based upon a provision of some general ordinance and it was held that publication was directory and not a condition precedent to the validity of the ordinance. In this case the creative statute, and not a local ordinance, directs publication. In so far as it is claimed that the case cited decides anything to the contrary, the court declines to follow it.

The plaintiff's contention that personal service, or its equivalent, of the ordinance was made on the defendant Standard Oil Company cannot be sustained. In all statutory proceedings by which the property rights of any citizen are invaded, the statute must be strictly pursued in every essential detail. A citizen, with whose private rights there has been an interference or whose property is injuriously affected, is justified in insisting upon substantial compliance with a statute intended for his protection. It will not do to say that some notice was given. All the forms of law must be observed. The futile attempt to serve a copy of the ordinance upon Williamson cannot be regarded as personal service on the corporate defendant. There is nothing to show that Williamson ever received the paper left at his home. Neither is there any evidence as to the nature of his employment by the defendant. Personal service of a copy of this ordinance on one of the officers of the defendant would not have been a burdensome task. It is difficult to understand why the plaintiff's officers neglected to accomplish it. The transmission of a certified copy by mail to the defendant's agent, Van Deusen, even though it may be said that he received it, is not the equivalent of personal service. (*Rathbun* v. *Acker,* 18 Barb. 393.) Personal service means just what those words imply. Service by mail does not meet the requirement. In that case the court held that where the statute required that personal notice of a village ordinance be given, a notice by mail, though it reaches the person for whom it was intended, was not a compliance with the statute. In the course of its opinion there the court said: " I shall not remark upon other questions raised, but conclude by repeating what has been so often decided, and so often disregarded; that statutes in derogation of the common law, and by which authority is delegated to corporations, etc., to sell the real estate of the citizen, or acquire the title thereto, are to be strictly construed; and the authority is

to be clearly shown, and strictly pursued. It will not do to adopt a course not authorized by the statute, upon the principle that it is equivalent to the requirement of the statute. *For instance, if the statute requires personal notice, a notice by mail, though it reaches the party, is no compliance with the statute.*"

The authority of that case has never been questioned and the rule of law there announced applies fully to the facts in this case.

Great reliance is placed by the plaintiff on *Mitchell* v. *Watkins* (21 App. Div. 285). That case is not in conflict with the views herein expressed. There a justice of the peace received from the hands of a letter carrier in the form of registered mail a notice of appeal. He received it, retained it and accepted the fees required to be paid for making his return, and also the costs included in the judgment. He actually mailed his return to the county clerk. He made no question regarding the method of service. The decision in *Mitchell* v. *Watkins* should be limited strictly to the facts disclosed in that record. In this case the corporate defendant has not acquiesced in the method of service. It stands before the court insisting that such service is not in accordance with law. Its protest cannot be overlooked or ignored.

If this were a case where one innocently dealt with the city and in good faith expended money for its benefit or parted with anything of value relying upon the representations implied by the passage of an ordinance that all essential requirements necessary to a valid enactment had been observed, and the city was resisting payment of an honest demand, a different question would be presented. Under such circumstances it might very well be that the city would be estopped to avail itself of irregularities in the exercise of the power conferred. In such a case one dealing with the government need not go behind apparently regular proceedings of the common council to make inquiry into preliminary or extrinsic irregularities. In this case, however, the city is seeking to enforce its ordinance and the burden is on it to show a binding enactment. This it has failed to do. The conclusion is irresistible that the defendant Standard Oil Company was not bound by the ordinance at the time of the commencement of the action.

Finally the plaintiff urges that this being an equitable action, and proof being made that the ordinance has meanwhile been duly published, it is entitled to relief restraining the use of these premises as a gasoline station. The answer to that is that *the ordinance was not in effect when the action was commenced.* It is true that in equitable actions the rule is "that the relief to be administered will be adapted to the exigencies of the case as they

8

exist at the close of the trial." (*Spears* v. *Mayor, etc., of N. Y.,* 87 N. Y. 359, 376; *Dammert* v. *Osborn,* 140 id. 30, 43; *Sanders* v. *Soutter,* 126 id. 193, 201.) This rule is subject to the qualification that there must be sufficient foundation for the suit when it was commenced. (*Sherman* v. *Foster,* 158 N. Y. 587.) In equity a " decree is addressed to the rights existing, not at the commencement, but at the time of the determination of the suit, provided there was sufficient foundation for the suit when it was commenced, and such relief is pertinent to that sought by the bill, and provided further it would be equitable and just to recognize the intervening rights." (21 C. J. § 846, pp. 663, 664.) In this case the ordinance not having legal existence when the action was commenced it necessarily follows that there was no foundation for the suit.

In view of the conclusion which I have reached it is unnecessary to discuss the other questions in this case. The plaintiff has failed to establish a cause of action and the complaint is dismissed, with costs, and the temporary injunction vacated. Because of the fact that the ordinance in question has been duly published and promulgated subsequently to the commencement of this suit, this decision shall not be construed as a bar to the maintenance of any other action or proceeding for its enforcement which the plaintiff may be advised to institute.

Findings may be presented in accordance with these views and judgment is hereby directed accordingly.